IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL A. FOSTER,                )
                                  )
            Plaintiff,            )
                                  )   CV 04-968-KI
      v.                          )
                                  )
JO ANNE B. BARNHART, Commissioner of )  OPINION AND ORDER
Social Security,                  )
                                  )
            Defendant.             )

DAVID B. LOWRY
9900 SW Greenburg Road
Columbia Business Center, Suite 235
Portland, Oregon 97223

      Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
CRAIG J. CASEY
Assistant United States Attorney
1000 SW Third Avenue, Ste 600
Portland Oregon 97204

1 - OPINION AND ORDER

LUCILLE G. MEIS
Office of the General Counsel
JEFFREY BAIRD
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Ste 2900 M/S 901
Seattle Washington 98104

    Attorneys for Defendant

KING, District Judge:

## INTRODUCTION

Plaintiff Michael Foster brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 USC §§ 405(g) and 1383(c). The Commissioner's decision is affirmed and the case dismissed.

## BACKGROUND

Foster was born September 3, 1954. Tr. 98.[1] He dropped out of school during the 8th grade. Tr. 486. He has worked in the past as a tire store laborer, courtesy clerk and grocery store stock person. Tr. 453. At the time of the hearing, Foster worked part-time as a courtesy clerk in a grocery store. Tr. 469.

Foster alleges disability beginning October 15, 2000, due to bursitis and arthritis which make it impossible for him to lift his arms and cause pain in the shoulders, elbows, hips and lower back. Tr. 98, 105.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer. (Docket # 8).

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 USC §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has established a five-step sequential process for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 US 137, 140 (1987); 20 CFR §§ 404.1520, 416.920. Foster challenges the fifth step of the ALJ's decision.

For the purposes of step five, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945; Social Security Ruling (SSR) 96-8p.

At step five, the Commissioner must determine whether the claimant retains the RFC to perform work that exists in the national economy. *Yuckert*, 482 US at 141-42; 20 CFR §§ 404.1520(e), (f), 416.920(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 US at 141-42; *Tackett v. Apfel*, 180 F3d 1094, 1098 (9th Cir 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR §§ 404.1566, 416.966.

## THE ALJ's FINDINGS

The ALJ found that Foster has bilateral shoulder bursitis which is severe within the meaning of the regulations because it significantly limits Foster's ability to do basic work activities. 20 CFR §§ 404.1520(c), 416.920(c). He found that Foster also had a substance addiction disorder that did not significantly limit his ability to perform any work-related function. Tr. 21.

The ALJ assessed Foster's RFC as follows:

> the claimant retains the residual functional capacity to lift 10 pounds occasionally and less than 10 pounds frequently. He can stand and walk 6 hours out of an 8-hour day and sit 6 hours out of an 8-hour day. He is limited in his ability to push and pull with the upper extremities. He is limited in his ability to reach in all directions with both upper extremities. He cannot climb ladders, ropes or scaffolds. He should avoid work around hazards.

Tr. 23.

At step five of the sequential evaluation, the ALJ found that Foster's RFC permitted him to perform work that exists in significant numbers in the national economy. He identified two examples of such work drawn from the testimony of the impartial vocational expert (VE): surveillance system monitor and telephone solicitor. Tr. 25. The ALJ concluded that Foster was not disabled and not entitled to benefits under Titles II and XVI of the Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).

## DISCUSSION

Foster contends the ALJ improperly evaluated the evidence of his RFC. He contends the ALJ failed to carry the Commissioner's burden of showing that he is capable of performing work in the national economy. He challenges the ALJ's refusal to consider four evidentiary motions presented before the hearing.

### I. RFC Assessment

Foster contends the ALJ failed to accurately assess his RFC because he improperly discredited Foster's subjective statements, rejected a medical source statement prepared by Toni Hero, DO, and Karl Kawza, DO, and ignored the testimony of the medical expert, Lawrence Cohen, MD. He also argues that the ALJ failed to comply with the requirements for assessing a claimant's RFC under SSR 96-8p.

#### A. Credibility Determination

Foster testified that he cannot work full-time because of joint pain and weakness in the arms. He is able to work part-time by using a ladder and keeping his elbows close to his body to avoid reaching. He does not bag groceries or stock shelves, but keeps product displays in order and tells customers where to find items in the store.

5 - OPINION AND ORDER

Foster said that at times he develops shoulder pain and cannot use his right shoulder. He has back and hip pain. He gets migraines about once a week. He has nausea up to twice a week for which he uses marijuana. He has crying spells up to twice a week, lasting up to 15 minutes. He stopped drinking alcohol one year before the hearing, and has not used heroin in years. The ALJ found that Foster's allegations were not entirely credible.

The ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of his symptoms. *Dodrill v. Shalala*, 12 F3d 915, 918 (9th Cir 1993). *See also Smolen v. Chater*, 80 F3d 1273, 1283 (9th Cir 1996). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995).

The ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's unexplained failure to seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id*. In addition, the ALJ may employ ordinary techniques of credibility evaluation such as prior inconsistent statements concerning symptoms and statements by the claimant that appear to be less than candid. *Id*. *See also* SSR 96-7p.

Here the ALJ considered proper factors and made specific findings to support his credibility determination regarding Foster's statements. He noted that the objective medical evidence did not support many of his alleged impairments. Foster claimed foot numbness and slowed pace but did not present any medical evidence of impairments that could reasonably be expected to produce these

symptoms. The medical expert testified that Foster's medical records included objective evidence only of shoulder impairments. Tr. 472.

The ALJ found that Foster's treatment history did not support the level of severity he alleged. Foster complained of occasional bursitis in the hip that lasts for three days during which he cannot walk. However, he only sought treatment for hip pain once. He complained of ongoing migraines but was only treated for one headache. The ALJ could reasonably conclude that Foster would have required medical intervention and produced medical evidence if these problems had been debilitating.

The ALJ also found Foster's level of activity inconsistent with the severity of limitation he alleged. Foster claimed that since 1998 he had developed exacerbations of pain in his back twice a week that were so severe that he could not work or "go around to do things." Tr. 480-81. These bouts last for two to three days each time. Similarly, Foster claimed that approximately once a month, his shoulder bursitis becomes so bad that he cannot move his shoulder at all or work for up to four days. He alleged he is unable to stand or sit for prolonged periods.

The ALJ found these claims inconsistent with Foster's testimony that he has not missed a day of work for at least a year and that he is able to work around his pain. Foster's testimony conflicts with reports that in addition to his job at the grocery store, he worked putting inserts into newspapers and held a volunteer position at Computer Warehouse. In addition, Foster attends church every Sunday and enjoys biking and walking. He reportedly uses a bicycle for transportation. The ALJ could reasonably conclude that a person with symptoms as severe as those Foster alleged would not be able to sustain such a level of activity.

The ALJ also noted statements by Foster about his drug and alcohol use that were clearly less than candid. In September 2002, Foster testified that he had not used heroin or any drugs other than marijuana in years. Just one month before giving that testimony, Foster admitted current heroin use to his drug program counselor. Tr. 357, 476.

On January 22, 2001, Foster told Dr. Rendleman that he had been clean and sober for over 15 months. However, just one month before making that statement, Foster injured himself while intoxicated on alcohol. Tr. 227. One month before that, he was admitted to the emergency department and treated for alcohol withdrawal. Tr. 295. In addition, on January 24, 2001, Foster told Caleb Burns, PhD, that he had not used cocaine in at least a year. Tr. 203. A urinalysis done the previous day was positive for cocaine. Tr. 361.

The ALJ's reasons are clear and convincing, based on proper factors and supported by substantial evidence. His narrative explanation shows that he did not discredit Foster's allegations arbitrarily. Accordingly, this court will not disturb the credibility determination he achieved.

**B.     Medical Source Statement**

Drs. Hero and Kawza treated Foster at Family Care Medical Clinics beginning on January 10, 2001. They diagnosed bilateral shoulder bursitis and described Foster's primary symptom as shoulder pain when lifting arms above neck. Tr. 367.

Drs. Hero and Kawza prepared a document titled Arthritis Residual Functional Capacity Questionnaire dated September 20, 2002. They opined that Foster often experienced pain severe enough to interfere with concentration and attention and that his subjective experience of pain was affected by depression, anxiety and chemical dependency (alcohol abuse).

They opined that Foster would not have problems with stamina, pain or fatigue and would not need a reduced pace if working full time at sedentary or light work. Tr. 368. They did not believe work would cause his condition to become worse. Tr. 369. They opined that Foster was not likely to be absent from work due to his impairments. Tr. 371.

Drs. Hero and Kawza indicated that Foster subjectively reported that he could continuously sit or stand for 20 minutes at a time, for a total of 2 hours each during and 8-hour workday. Foster subjectively claimed that he needed to walk during the workday, approximately every 20 minutes for 10 minutes each time. Tr. 369. Based on these subjective claims, Drs. Hero and Kawza opined that Foster would need to be able to shift positions at will and to take unscheduled 10-minute breaks every 90 minutes. Tr. 370.

The marginal notes show that the indicated limitations in sitting, standing, walking and the need to take unscheduled rest breaks are simply a record of Foster's subjective reports rather than a medical opinion. The ALJ gave little weight to the claimed limitations because they were based on subjective statements from Foster and Drs. Hero and Kawza did not provide any other basis for the limitations indicated.

The ALJ can reject a treating physician's opinion in favor of the conflicting opinion of other treating or examining physicians, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989). If the treating physician's opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F3d 947, 956-57 (9th Cir 2002).

An ALJ can properly reject a physician's opinion that is premised on the claimant's own subjective complaints which the ALJ has already properly discounted. *Fair v. Bowen*, 885 F2d 597, 605 (9th Cir 1989); *Tonapetyan v. Halter*, 242 F3d 1144, 1149 (9th Cir 2001). Because the limitations identified in this medical source statement were premised entirely on Foster's subjective claims which lacked credibility, the ALJ's determination that it was entitled to little weight will not be disturbed.

### C. Medical Expert Testimony

Dr. Cohen testified that clinical evidence supported Foster's claim that he has pain in one shoulder due to calcific tendinitis. His other shoulder might have rotator cuff irritation, but x-ray studies were normal. Dr. Cohen found no objective evidence indicating Foster could not work more than 15 hours a week. Tr. 472. Based on Foster's description of his job duties, the ALJ asked whether the objective evidence would lead Dr. Cohen to believe Foster's statement that he could not work more than 15 hours a week. Dr. Cohen responded "I think it could well be true." Tr. 477.

The ALJ did not address Dr. Cohen's testimony explicitly in his written decision. However, this court finds no reversible error. The ALJ did not reject any portion of Dr. Cohen's testimony and the testimony is entirely consistent with the ALJ's determination. Dr. Cohen's statement that Foster has pain in the shoulders is consistent with the ALJ's RFC assessment which limited Foster's use of the upper extremities. The ALJ found that Foster can sustain regular and continuing work activities with the limitations described in his RFC assessment, which is consistent with Dr. Cohen's statement that objective evidence does not establish the inability to perform work activities more than 15 hours a week.

Foster relies on Dr. Cohen's equivocal statement that "it could well be true" that he cannot perform his job duties more than 15 hours a week. Tr. 477. This court cannot read as much into this statement as Foster urges. The testimony states only an equivocal possibility. Dr. Cohen did not say the evidence led him to believe it was true or probably true or more likely than not true. He simply said it could be true. Read together with his testimony that there is no objective evidence to support a finding that Foster cannot work more than 15 hours, this statement cannot be given great weight. Tr. 472, 477.

Moreover, the context makes it clear that Dr. Cohen was not referring to Foster's ability to perform all work activities more than 15 hours a week. The ALJ specifically referred to Foster's description of his current job duties as a courtesy clerk when he asked Dr. Cohen whether he believed Foster's statement that he cannot work more than 15 hours a week. Tr. 477. At most, Dr. Cohen's testimony would support a finding that Foster cannot perform his work as courtesy clerk more than 15 hours a week. This is precisely the determination reached by the ALJ at step four of the sequential evaluation. Tr. 24. The ALJ found that Foster's RFC precluded his past relevant work.

Because the ALJ did not reject Dr. Cohen's testimony and reached a determination that was entirely consistent with it, this court finds no reversible error in the ALJ's treatment of this evidence.

### D. The Requirements of SSR 96-8p

Foster contends the ALJ failed to comply with the requirements of SSR 96-8p, which requires the ALJ to identify the claimant's functional limitations and work restrictions and assess the claimant's work-related abilities on a function-by-function basis. The ALJ provided a detailed narrative review of the objective medical evidence, the symptoms described by Foster and the

opinions of medical sources. Tr. 19-23. He gave "significant weight" to the function-by-function analysis of the state agency reviewing physicians. Tr. 23, 322-26. In doing so, the ALJ complied with SSR 96-8p.

Foster argues that the ALJ failed to assess whether he is capable of working on a regular and continuing basis for 8 hours a day, 5 days a week. He bases this argument on the medical source statement of Drs. Hero and Kawza and the testimony of Dr. Cohen described more fully above. This reliance is misplaced because the ALJ properly discounted the medical source statement of Drs. Hero and Kawza and reached a determination that was consistent with Dr. Cohen's testimony.

Foster argues that the ALJ failed to explain the basis for his conclusions that Foster can perform the walking, sitting, standing and mental abilities required for light work. The ALJ evaluated all the evidence of limitations in these functional areas and his narrative description adequately explained the bases for the conclusions he reached with respect to that evidence.

Foster argues that the ALJ failed to consider all of his nonsevere impairments, including sleep difficulties, depression, hip pain, headaches and side effects of medication, in reaching his RFC assessment. There is no credible evidence in the record that the nonsevere impairments listed cause any limitation in Foster's ability to perform basic work activities. The ALJ evaluated all the evidence of Foster's functional limitations, and in doing so adequately considered Foster's nonsevere impairments.

Foster argues that the ALJ failed to consider all of the medical evidence. However, he specifies only the testimony of Dr. Cohen and the medical source statement of Drs. Hero and Kawza. As shown already, the ALJ gave this evidence adequate consideration.

In summary, the ALJ assessed Foster's functional abilities and limitations and work restrictions based on the record as a whole, and adequately complied with the requirements of SSR 96-8p..

## II. Vocational Testimony

At step five, the Commissioner must show that the claimant can do other work which exists in the national economy. *Andrews v. Shalala*, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Id.* The assumptions in the hypothetical question must be supported by substantial evidence. *Id.*

Foster contends the ALJ failed to satisfy the Commissioner's burden because he elicited vocational testimony with a hypothetical question that did not reflect all of Foster's impairments. He apparently argues that the ALJ should have elicited vocational testimony based on limitations suggested in his testimony and in the medical source statement described above. He also appears to argue that the vocational hypothetical should have reflected his nonsevere impairments.

The ALJ considered all the evidence and posed his vocational hypothetical question based on the limitations supported by the record as a whole. Because the ALJ did not find additional limitations asserted by Foster supported by the record, it was not error for him to exclude them from his hypothetical question. *Magallanes v. Bowen*, 881 F2d at 756-57. Accordingly, the ALJ's hypothetical question was sufficient.

Foster contends the VE's testimony regarding the number of jobs as a surveillance system monitor and telephone solicitor existing in the national economy lacked foundation and should be disregarded under *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 US 579, 598 (1993). In

13 - OPINION AND ORDER

*Daubert*, the Supreme Court ruled on the prerequisites for admissibility in federal trials of purported scientific evidence under Rule 702 of the Federal Rules of Evidence. *Id.* Under Rule 702, a district court judge must ensure that a purported expert's opinion rests on a reliable foundation and is relevant. *Id.* Foster contends the VE's testimony regarding the number of jobs is inadmissible because the ALJ did not ensure that it was based on a reliable foundation.

However, *Daubert* and Rule 702 have no application in the context of administrative hearings before an ALJ. An ALJ may receive evidence at such hearings even though the evidence would not be admissible in court under the rules of evidence used by the court. 42 USC § 405(b)(1); 20 CFR § 404.950(c), 416.1450(c).

Foster had the opportunity to ask the VE to explain how she estimated how many jobs exist in the national economy as a surveillance system monitor or telephone solicitor. He did not do so. If this was error, it was not attributable to the Commissioner.

### III. **Prehearing Motions**

Foster presented four written submissions with numerous attachments to the ALJ before his hearing. He sought: (1) to suppress VE testimony regarding the number of jobs for lack of foundation; (2) to suppress all unfavorable evidence due to alleged failures to comply with SSR 96-5p, SSR 96-2p, 96-8p and other unspecified regulatory requirements; (3) to have a medical advisor present at the hearing; and (4) to suppress the written functional capacity reports of the state agency reviewing physicians. The ALJ overruled these submissions. Tr. 461.

Foster asks the court to remand for further proceedings pursuant to sentence six of 42 USC § 405(g), arguing that the ALJ's failure to place these submissions in the record is analogous to a lost file rendering the record incomplete. For the following reasons, the court declines to do so.

At this stage of the judicial proceedings, the court can remand under sentence six of 42 USC § 405(g) "only upon a showing that there is new evidence that is material and that there is good cause for the failure to incorporate such evidence into the record" earlier. 42 USC § 405(g). The submissions excluded by the ALJ do not contain new material evidence.

Indeed Foster's submissions sought to suppress evidence. There is no provision in the regulations or other authorities cited by Foster for the suppression of evidence as he requested. The ALJ can receive evidence in administrative hearings that would not be admissible in court. 42 USC § 405(b)(1); 20 CFR §§ 404.950(c), 416.1450(c).

Foster's submission regarding foundation for the VE's testimony lacked merit for the reasons described in the preceding section of this opinion. His submission requesting the presence of a medical advisor was moot because Dr. Cohen appeared and provided medical expert testimony. His submission regarding alleged lack of compliance with regulatory requirements failed to identify any specific violation in the administrative proceedings in this case. Instead, he complained of alleged general practices of the Social Security Administration and the state disability determination agency. His request to suppress the functional capacity reports of non-examining agency physicians as hearsay is contrary to the statutory and regulatory provisions making the rules of evidence inapplicable. For these reasons, the ALJ's conclusion that Foster's submissions had no probative value and were not supported by law is sustained.

## CONCLUSION

Based on the foregoing, the ALJ's decision that Foster does not suffer from a disability and is not entitled to benefits under the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

DATED this __11th__ day of June, 2005.

    /s/ Garr M. King
Garr M. King
United States District Judge